# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

**JAMES CALVIN MALLORY**                                                                 **PLAINTIFF**
a.k.a. Saddiq Al-Rahman Muhammad
v.                                                                    **CIVIL ACTION NO. 3:17-CV-P253-CRS**

**WARDEN AARON SMITH et al.**                                                          **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Plaintiff, James Calvin Mallory, a.k.a. Saddiq Al-Rahman Muhammad, proceeding *pro se* and *in forma pauperis*, initiated this 42 U.S.C. § 1983 action. This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the following reasons, the complaint will be dismissed in part and allowed to continue in part.

## I. SUMMARY OF CLAIMS

Plaintiff is an inmate housed at the Kentucky State Reformatory in the Corrections Psychiatric Treatment Unit (CPTU).[1] He names as Defendants Warden Aaron Smith, Deputy Warden Anna Valentine, Deputy Warden James Coyne, Captain Joshua Schank, and Commissioner Rodney Ballard. He sues each Defendant in his or her individual and official capacities.

Plaintiff states that Defendants Smith, Valentine, Coyne, and Ballard placed him in the CPTU on April 5, 2017. He states that in the CPTU he has no access to his legal work and that he has no sheets, socks, family photos, toothbrush, toothpaste, or comb "in retaliation of racial profiling." He also states that his cell is dirty, with feces on the wall, as well as blood on the wall and mattress.

---

[1] Plaintiff states that he is a convicted inmate on the § 1983 complaint form, but it appears that he is also a pretrial detainee because he references pending charges against him.

Plaintiff alleges that Defendant Schank came to his cell and threatened Plaintiff with "high power O.C. spray if I didn't stop asking for my property legal." According to Plaintiff, Defendant Schank also told him that he would "form a move team to come in my cell in beat me to death." He also alleges that on April 17, Defendant Schank called him a "no good ratting nigger and if he had his way they would beat me shitless."

Plaintiff states that on April 5, 2017, all Defendants forced him to shower in a shower with various bodily fluids in it and that this practice has continued three times per week.

Plaintiff alleges that there is no reason that he should be housed in a psychiatric ward around mentally ill patients who yell and bang on their doors "24/7."

Plaintiff further alleges that all Defendants have tampered with his incoming and outgoing mail.

Plaintiff requests compensatory, punitive, and injunctive relief.

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action if the Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1) and (2). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The Court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. When determining whether a plaintiff has stated a claim upon which relief can be granted, the Court must construe the complaint in a light most favorable to Plaintiff and accept all of the factual allegations as true. *Prater v. City of*

*Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall,* 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## A. *Official-capacity claims*

"Official-capacity suits . . . 'generally represent [ ] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). Because Defendants are employees of the Commonwealth of Kentucky, the claims brought against them in their official capacities are deemed claims against the Commonwealth of Kentucky. *See Kentucky v. Graham*, 473 U.S. at 166. State officials sued in their official capacities for money damages are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Additionally, the Eleventh Amendment acts as a bar to claims for monetary damages against these state-employee Defendants in their official capacities. *Kentucky v. Graham*, 473 U.S. at 169. Thus, Plaintiff's claims against Defendants for money damages in their official capacities fail to allege a cognizable claim under § 1983 and will be dismissed.

The only injunctive relief Plaintiff seeks is release from CPTU. Such a claim is prospective and therefore is not barred by the Eleventh Amendment. *Ex parte Young*, 209 U.S. 123, 159-60 (1908); *Doe v. Wigginton*, 21 F.3d 733, 737 (6th Cir. 1994). Under *Ex parte Young*, Plaintiff may sue a state official in his or her official capacity for injunctive relief. *McKay v. Thompson*, 226 F.3d 752, 757 (6th Cir. 2000) "[T]he Eleventh Amendment permits prospective

injunctive relief, but not damage awards, for suits against individuals in their official capacities under 42 U.S.C. § 1983.").

Because, as discussed below, the Court will allow Plaintiff's claims related to the conditions of confinement in the CPTU and for having been placed there to continue, the Court will allow the official-capacity for injunctive relief against Defendants Smith, Valentine, Coyne and Ballard to go forward.

### B. *Individual-capacity claims*

#### 1. *Denial of access to legal materials*

Plaintiff alleges that, in the CPTU, he has no access to his legal work.

Prison officials may violate a prisoner's First Amendment right of access to the courts by confiscating and/or destroying a prisoner's legal materials or papers. *See Simmons v. Dickhaut*, 804 F.2d 182, 183-84 (1st Cir. 1986) (per curiam) (collecting cases). In order to state a viable claim for interference with his access to the courts under the First Amendment, Plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999). In other words, a plaintiff must plead and demonstrate that lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

An inmate must make a specific claim in the complaint that he was adversely affected or that the litigation was prejudiced. *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005). "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Id*. (citing

4

*Jackson v. Gill*, 92 F. App'x 171, 173 (6th Cir. 2004)). Here, Plaintiff makes no such claim. Therefore, this claim will be dismissed.

   2. *Equal protection claim*

Plaintiff alleges that in the CPTU he has no access to his legal work and he has no sheets, socks, family photos, toothbrush, toothpaste, or comb "in retaliation of racial profiling."

Plaintiff's complaint does not explain what race he is, although given the racial epithet he alleges was used against him, the Court will assume that he is African American. However, Plaintiff's wholly conclusory assertion that he suffered "retaliation" because of "racial profiling" cannot support an equal-protection claim. *Harden-Bey v. Rutter*, 524 F.3d 789, 796 (6th Cir. 2008) (affirming dismissal of prisoner's equal-protection claim which said "only that his placement in administrative segregation was 'created on Religious Bias.'"). This claim will be dismissed for failure to state a claim.

   3. *Threats from Defendant Schank*

Plaintiff alleges that Defendant Schank threatened Plaintiff with "high power O.C. spray if I didn't stop asking for my property legal" and with "a move team" to beat him to death. He also alleges that, on one occasion, Defendant Schank called him a "no good ratting nigger and if he had his way they would beat me shitless."

Harassing or degrading language by a prison official, while unprofessional and despicable, does not amount to a constitutional violation. *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) ("[V]erbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim."); *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987) (per curiam); *see also McDonald v. Sullivan Cty. Jail*, No. 2:08-CV-280, 2010 WL 2010834, at *3 (E.D. Tenn. May 18, 2010)

(finding prison guard's threat to kill plaintiff "may be petty, oppressive, and unprofessional, [but] it is not unconstitutional"); *Miles v. Tchrozynski*, No. 2:09-CV-11192, 2009 WL 960510, at *1 (E.D. Mich. Apr. 7, 2009) ("Even verbal threats by a corrections officer to assault an inmate do not violate an inmate's Eighth Amendment rights."); *Searcy v. Gardner*, No. 3:07-0361, 2008 WL 400424, at *4 (M.D. Tenn. Feb. 11, 2008) ("A claim under 42 U.S.C. § 1983 cannot be based on mere threats, abusive language, racial slurs, or verbal harassment by prison officials.").

The claims against Defendant Schank in his individual capacity will be dismissed for failure to state a claim upon which relief may be granted. Because the only injunctive relief Plaintiff seeks is release from CPTU, and because Plaintiff does not allege that Defendant Schank was responsible for his placement there, Defendant Schank will be dismissed from the lawsuit.

   *4. Tampering with mail*

Plaintiff alleges that "all Defendants are tampering with all my outgoing [and] incoming mail."

Prisoners have a First Amendment right to communicate with the outside world by sending and receiving mail, although it is subject to prison policies that are reasonably related to legitimate penological interests. *Thornburg v. Abbott*, 490 U.S. 401, 407 (1989); *Turner v. Safely*, 482 U.S. 78, 85, 89 (1987). Plaintiff, however, does not specifically allege how any of the named Defendants were involved in tampering with his mail, which is a basic pleading requirement. *Harris v. Scott*, No. 1:15-CV-550, 2015 WL 7722030, at *4 (W.D. Mich. Nov. 30, 2015).

Moreover, Plaintiff does not allege that he has not received any of his mail or that he has been prevented from mailing any correspondence. His conclusory allegations of unconstitutional

6

conduct without specific factual allegations fail to state a claim under § 1983. *See Ashroft v. Iqbal*, 556 U.S. 662, 678-69 (2009); *Twombly*, 550 U.S. at 555. The claim related to mail-tampering will be dismissed.

   5.   *Conditions of confinement*

Plaintiff alleges that, in the CPTU, he has no sheets, socks, family photos, toothbrush, toothpaste, or comb; that the cell is dirty and contaminated with feces and blood; and that he is forced to shower in a shower with various bodily fluids in it. He alleges that Defendants Smith, Valentine, Coyne, and Ballard are responsible for his placement in CPTU.

The Court notes that according to the complaint, Plaintiff was placed in CPTU on April 5, 2017, and he signed his complaint on April 19, 2017, *i.e.*, two weeks later.

"Due process requires that a pretrial detainee not be punished. A sentenced inmate, on the other hand, may be punished, although that punishment may not be 'cruel and unusual' under the Eighth Amendment." *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979). "Although the Eighth Amendment's protections apply specifically to post-conviction inmates, the Due Process Clause of the Fourteenth Amendment operates to guarantee those same protections to pretrial detainees as well." *Miller v. Calhoun Cty.*, 408 F.3d 803, 812 (6th Cir. 2005) (internal citation omitted). Thus, it matters not for purposes of initial screening in this case that the question of whether Plaintiff is a prisoner or a pretrial detainee is unclear because the Sixth Circuit applies the Eighth Amendment standard to pretrial detainees. *Norris v. Jackson*, No. 1:12CV-P167-M, 2012 WL 4857832, at *3 (W.D. Ky. Oct. 11, 2012) (citing *Spencer v. Bouchard*, 449 F.3d 721, 727 (6th Cir. 2006)); *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985) ("[T]he eighth amendment rights of prisoners are analogized to those of detainees under the fourteenth

amendment, to avoid the anomaly of extending greater constitutional protection to a convict than to one awaiting trial.").

"Extreme deprivations are required to make out a conditions-of-confinement claim" under the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d at 955. The length of confinement is important in determining whether conditions of confinement meet constitutional standards. *Hutto v. Finney*, 437 U.S. 678, 686-87 (1978) ("[T]he length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards. A filthy, overcrowded cell and a diet of "grue" might be tolerable for a few days and intolerably cruel for weeks or months."); *see also Ziegler v. Michigan*, 59 F. App'x 622, 624 (6th Cir. 2003) (holding that allegations of overcrowded cells and denials of daily showers and out-of-cell exercise do not rise to constitutional magnitude where a prisoner is subjected to the purportedly wrongful conditions for six days one year and ten days the next year); *Metcalf v. Veita*, No. 97-1691, 1998 WL 476254, at *2 (6th Cir. Aug. 3, 1998) (holding that an eight-day denial of showers, trash removal, cleaning, and laundry did not result in serious pain or offend contemporary standards of decency under the Eighth Amendment); *Whitnack v. Douglas Cty.*, 16 F.3d 954, 958 (8th Cir. 1994) (holding that deplorably filthy and patently offensive cell with excrement and vomit not unconstitutional because conditions lasted only for 24 hours); *Bass v. Strode*, 1:12CV-P182-R, 2012 WL 5834123, at *3-4 (W.D. Ky. Nov. 16, 2012) (finding that isolation for 72 hours in which plaintiff was forced to eat and sleep on the floor without cleaning supplies was not a constitutional violation); *compare Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011) (finding an Eighth Amendment issue of fact in a § 1983 action

where for nine months, the prisoner had been left in a filthy, disgustingly unsanitary cell where mold grew in the toilet and the cell floor was littered with food trays); *Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007) (per curiam) (where "[t]he floor of the cell was covered with water, the sink and toilet did not work, and the walls were smeared with blood and feces [and prisoner plaintiff] was forced to remain in the cell without a mattress, sheets, toilet paper, towels, shoes, soap, toothpaste, or any personal property, for six days" district court should not have granted summary judgment in favor of defendants); *Lee v. Birkett*, No. 09-cv-10723, 2010 WL 1131485, at *5 (E.D. Mich. Feb. 18, 2010) (discussing the possibility that allegations that prisoners were forced to use common razors and be exposed to other unsanitary conditions for two months could meet the objective component of the deliberate-indifference standard).

Because Plaintiff has alleged that he had to live in unsanitary conditions for at least two weeks, the Court will allow the conditions-of-confinement claim to proceed against Defendants Smith, Valentine, Coyne, and Ballard in their individual capacities.

*6. Being placed in CPTU*

Plaintiff alleges that on April 5, 2017, Defendants Smith, Valentine, Coyne, and Ballard "made decisions to illegally place [Plaintiff] in C.P.T.U. at K.S.R." He alleges that there is no reason that he should be housed in a psychiatric ward around mentally ill patients who yell and bang on their doors "24/7." It appears that Plaintiff may be alleging a procedural due process claim regarding being placed involuntary in the psychiatric unit. *See Vitek v. Jones*, 445 U.S. 480, 494-96 (1980); *see also Sandin v. Conner*, 515 U.S. 472, 479 n.4 (1995) (reaffirming *Vitek*). The Court will allow this claim to continue.

### III. CONCLUSION AND ORDER

For the foregoing reasons,

**IT IS ORDERED** that the official-capacity claims against all Defendants for monetary damages are **DISMSISED** pursuant to 28 U.S.C. § 1915A(b)(2).

**IT IS FURTHER ORDERED** that the individual-capacity claims relating to access to legal materials, equal protection, threats by Defendant Schank, and mail tampering are **DISMISSED** for failure to state a claim pursuant to 28 U.S.C. § 1915A(b)(1).

The Clerk of Court is **DIRECTED** to terminate Captain Joshua Schank as a party to this action.

The Court will allow Plaintiff's claims regarding the conditions of confinement and the due process claim related to being placed in CPTU to continue against Defendants Smith, Valentine, Coyne and Ballard for injunctive relief in their official capacities and for monetary relief in their individual capacities. In allowing these claims to continue, the Court expresses no opinion on their ultimate merit. The Court will enter a separate Order Regarding Service and Scheduling Order to govern the development of the remaining claims.

Date: August 11, 2017

Charles R. Simpson III, Senior Judge
United States District Court

cc: Plaintiff, *pro se*
Defendants
General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4411.009